Filed 10/5/17; Modified and Certified for Pub. 11/2/17 (order attached)

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(Sacramento)

----

| | |
|---|---|
| TAMMY FERNANDES, | C080264 |
| Plaintiff and Respondent, | (Super. Ct. No. 34-2013-00146694-CU-BC-GDS) |
| v. | |
| RAJ SINGH et al., | |
| Defendants and Appellants. | |

Tammy Fernandes successfully sued vexatious litigant Raj Singh and his wife Kiran Rawat individually and as trustees of the Sita Ram--or "Sitaram"--Trust (Trust), for wrongful eviction and related claims. She obtained an award of compensatory and punitive damages, as well as costs and attorney fees. All defendants filed a joint notice of

1

appeal through counsel. While Rawat and the Trust remain represented by counsel on appeal, Singh now represents himself.[1]

On appeal, Rawat claims error in the trial court's denial of her motion to vacate the judgment based on lack of service, and attacks the punitive damage award. Singh also challenges the punitive damage award, disputes service on Rawat, and contends the attorney fee award was excessive. Finding no merit in defendants' claims, we shall affirm.

## BACKGROUND

On June 17, 2013, Fernandes sued Singh and Rawat, both as individuals and as trustees of the Trust, alleging (among other theories) breach of the warranty of habitability, conversion of personal property, and wrongful eviction. The lawsuit followed three unlawful detainer complaints filed by defendants after Fernandes exercised her right to complain about the substandard conditions of her rental unit.

Former attorney Oliver filed an answer "for Defendants," denying the allegations and raising the affirmative defense that Fernandes breached the rental agreement. He also filed a cross-complaint "for Defendants," purportedly in the name of "Raj Singh, on behalf of himself and all others similarly situated."[2]

---

[1] Singh's vexatious litigant status is explained in *Singh v. Lipworth* (2014) 227 Cal.App.4th 813 (*Singh*). (See also *Singh v. Lipworth* (2005) 132 Cal.App.4th 40.) Singh's former attorney, Keith Oliver, mentioned again *post*, was later disbarred, in part for failing to pay the sanctions we ordered for filing a frivolous appeal in *Singh*. (See *In re Oliver*, State Bar Court No. 14-O-03153 (Sep. 9, 2015) p. 6.)

[2] Although these pleadings are captioned as by Oliver, and purportedly signed by him, the contents do not appear to have been written by an attorney, suggesting that, as in the *Singh* case, he may have acted as a " 'puppet' " for Singh. (See *Singh*, *supra*, 227 Cal.App.4th at pp. 823-824 ["Similar allegations [of puppetry] were made in two unrelated appeals, *County of Sacramento v. Rawat* (Feb. 24, 2014, C075383) and *County of Sacramento v. Rawat* (Feb. 24, 2014, C075384) (both subsequently dismissed), in which Oliver was also purportedly representing Singh. In response . . . this court sent a

2

On January 23, 2014, Singh substituted himself in propria persona. He then began to file various bizarre pleadings.

*Trial on Liability*[3]

The trial court's March 26, 2015 statement of decision found as follows.

Singh held himself out as the owner of the property when he rented it to Fernandes in 2010, although the property was not habitable. On November 12, 2010, Singh filed an unlawful detainer action against her by using a false name to evade the prefiling requirements of the vexatious litigant statutes. That case was dismissed for "nonappearance of the parties, though Singh, accompanied by attorney Paul Hoff, was present when the case was called for trial." On September 20, 2011, Singh filed a second unlawful detainer action via counsel Hoff, naming the Trust as plaintiff and identifying himself as the landlord. Fernandes prevailed and obtained a conditional judgment reducing her rent and ordering the Trust to repair the premises. "Singh was present at this hearing as the agent for the trust, accompanied by attorney Hoff." At a November 21, 2011 progress hearing on the repairs, no repairs had been undertaken or completed. On that date, Hoff dropped out of the case, and Singh unsuccessfully moved to dismiss it.

On April 11, 2012, Singh filed a third unlawful detainer action against Fernandes, listing himself and Rawat as a trustee for the Trust. He falsely stated an amount of unpaid rent (disregarding the conditional judgment), filed a fraudulent proof of service, took her default, obtained an eviction order, had the sheriff evict her, and then changed

---

letter to the State Bar referring the matter for investigation"].) The trial court first charitably described the cross-complaint as "an unstructured pleading," but later found it to be "unintelligible and self-contradictory and as such . . . frivolous."

[3] The record on appeal does not contain all case documents. "To the extent the record is incomplete, we construe it against [the appellants]." (*Sutter Health Uninsured Pricing Cases* (2009) 171 Cal.App.4th 495, 498.) Nor is there a transcript of the liability trial.

3

the locks. Fernandes returned home after working a graveyard shift as a waitress at a Denny's restaurant to find herself locked out, with deputies barring her entrance, so she could not "retrieve even her most rudimentary belongings" including "necessities of life, like food and clothing." She had nowhere to live, stayed with friends, and struggled to keep her job.

On April 30, 2013, a County of Sacramento code officer inspected the property at the request of subsequent tenants, and found "the very same defects present when Fernandes" was living there, and noted that Singh refused to make repairs and tried to serve a three-day notice to quit on the current occupants, misstating the date.

Singh never complied with a court order to return the property Fernandes had left in her unit, although she found some of her property in a trash can. The estimated value of the missing property was nearly $21,000. Her ordeal at Singh's hands caused Fernandes "great emotional distress."

The trial court found "Singh rented uninhabitable premises to Fernandes at an exorbitant rental rate and then retaliated against her when she complained about the uninhabitable conditions. His conduct is utterly indefensible." The total award for compensatory damages was $87,894.

The trial court found four retaliatory acts: the three unlawful detainer actions, plus the repeated demands for payment of rent despite the conditional judgment in favor of Fernandes. The statutory penalty was $2,000 per act, or $8,000. (See Civ. Code, § 1942.5, subd. (f)(2).) By clear and convincing evidence, the trial court found Singh acted with oppression, fraud or malice, both actual and implied, based on his "despicable conduct . . . with a willful and conscious disregard of the rights or safety of Fernandes. Moreover, clear and convincing evidence establishes that defendant Kiran Rawat, who is

4

in default for non-appearance at trial and the Sitaram Trust ratified and approved the malicious, fraudulent and oppressive conduct of defendant Singh." [4]

The statement of decision then provides "this court must consider the net worth of the defendants in assessing an appropriate punitive damage award. Accordingly, Raj Singh, Kiran Rawat and the Sitaram Trust are ordered to appear and present evidence of (1) profits gained from the rental of the premises to Fernandes; 2) their financial condition, to include evidence of income, assets, liabilities and net worth. *Failure to comply with this order will be deemed a waiver of the right to contest the amount of punitive damages thereafter awarded.*" (Italics added.) All parties were ordered to appear at a hearing on April 3, 2015.

*Punitive Damages Hearing*

At the April 3, 2015 hearing on punitive damages, Rawat did not appear. Singh had filed a "reply" to the statement of decision, but it did not explain his financial condition or list his properties; instead it objected that it was a plaintiff's burden to prove financial condition. Singh also claimed *he* had suffered financial harm and was entitled to damages of over $200,000, as well as sanctions of $1,000,000.

Counsel for Fernandes filed a declaration in support of punitive damages, detailing his search of property records, showing the Trust held property in the Sacramento area of a total sale value of over $341,000, and Rawat held property of a total sale value of over $1,383,000, but that it was impossible to ascertain Singh's own holdings, due to his common name. This declaration was not rebutted.

At the hearing, the trial court asked Singh if he would produce his financial information, and Singh declined, claiming there were "lawsuits pending with IRS" and

---

[4] Contrary to an alternative assumption by Fernandes, the trial court's usage of "default" in this particular passage did not mean a default judgment was entered, it merely meant that Rawat did not appear at the trial.

5

claiming not to own any property. He claimed to be unemployed. He never explained what happened to the money he received from Fernandes.

In a "final" statement of decision, the trial court ruled that the failure of each defendant to comply with the order regarding financial condition barred any objection to an award of punitive damages. The court found:

> "Clear and convincing evidence therefore establishes that Singh, Rawat and the Sitaram Trust owned, managed and controlled the subject property . . . and in so doing, engaged in conduct that was intentional, malicious, fraudulent and oppressive. The evidence likewise establishes their actions were part of a continuing course of misconduct and a method of doing business rather than an isolated incident, because the persons who succeeded Fernandes as tenants were subjected to the same or similar oppressive tactics.

> "In consideration of the evidence of financial condition of the defendants, the extreme reprehensibility of their conduct and the extent of the harm inflicted on plaintiff, punitive damages are awarded in the amount of $350,000."

*Post-Punitive Damages Trial Motions*

Singh moved to modify the ruling, in part alleging that *Rawat* was never served. In reply, Fernandes in part relied on a proof of service on Rawat, the answer filed by Oliver on behalf of "Defendants," and Rawat's verified response to standard interrogatories.

The trial court denied Singh's motion on May 22, 2015, and filed a formal judgment on that same day, awarding Fernandes $87,894 in compensatory damages and $350,000 in punitive damages, plus costs, prejudgment interest, and attorney fees.[5]

Singh filed another motion, confusingly captioned and structured, but in essence seeking to change the judgment. This was later denied.

---

[5] Although not explicitly stated in the judgment, it appears the $8,000 in statutory penalties was deemed to be subsumed within the total punitive damage award.

6

Rawat and the Trust moved to set aside the "ruling" alleging Rawat was "surprised to know that there is a judgment against me and against Sitaram Trust in this case." Rawat claimed Oliver abandoned her, "never even informed Kiran Rawat and Sitaram Trust about this case," and she had not been served with any documents in the case. Rawat declared Singh "never even informed me all the facts in this case" and "never asked my approval to do anything in this case." Rawat did not, however, declare that she did not *know* about the case.

Later, and represented by counsel, Rawat, individually and in her capacity as a trustee of the Trust, filed a formal motion to vacate the judgment as "void" due to lack of service. In support, Rawat filed a new declaration alleging she was the *only* trustee of the Trust; the facts stated in the proof of service (at the Sacramento County courthouse) were not correct because she was never served at any point; she was never "mailed any information about this case"; she first learned of this case from Singh on June 10, 2015, after the adverse judgment; and she had been "legally separated" from Singh since 2005 (thereby conceding she was still married to him). Rawat also alleged that Singh had no authority to accept service for the trust, she had never hired Oliver to represent *the Trust* (but she did not explicitly declare that she had not hired Oliver to represent *her*), she had not executed any documents in the case, and she "never had any conversations about the litigation" with Oliver. No documents corroborating her alleged legal separation from Singh were provided.

In opposition, Fernandes again relied on the proof of service, the answer, and Rawat's discovery responses, to show she had been served and had appeared. As for the claim of abandonment, Fernandes contended that may cause liability for Oliver, but did not deprive the court of jurisdiction over Rawat.

In reply, Rawat filed another declaration alleging in part that she never signed the discovery verification and had had no knowledge of it, and she had never hired Oliver to

7

represent her or the Trust. She later filed another declaration, avowing that she had been at work at Mercy General Hospital at the time she was allegedly served.

At the hearing on the motion to vacate filed by Rawat and the Trust, counsel argued the presumption arising from the filed proof of service was rebutted by Rawat's denial that she was served, that she never hired attorney Oliver, that she did not sign any discovery documents filed by Oliver, and that she was unaware of any such documents.

The trial court denied the motion to vacate the judgment and granted a motion for attorney fees of $21,595, and costs of $1,310, that had been opposed by Singh. The court found Rawat had not rebutted the presumption of proper service, finding that her declarations denying service were "unpersuasive." The court separately found Rawat appeared in the action by filing an answer and responding to discovery, and again stated it did not credit her contrary declarations.

On July 30, 2015, the trial court amended the formal judgment by adding the costs and attorney fees, over Singh's repeated objections.

New counsel then filed a timely notice of appeal on behalf of "Defendants," but Singh is now self-represented in this court.

## DISCUSSION

### I

### *Appeal of Rawat*

Rawat attacks the denial of her motion to vacate the judgment, contending the judgment was void for lack of service and extrinsic fraud. She also attacks the punitive damage award, both for lack of evidence of reprehensible conduct and lack of evidence of financial condition. We shall reject each of these claims.

8

A. *The Motion to Vacate*

Rawat's statement of facts regarding her motion to vacate recites the evidence from her declarations as if the trial court had credited those declarations. By doing so, she has forfeited any contention of error regarding the motion to vacate, as we shall explain.

> "A judgment or order of a court of general jurisdiction . . . is presumed to be valid, i.e., the court is presumed to have jurisdiction of the subject matter and the person, and to have acted within its jurisdiction. The judgment need not recite the jurisdictional facts, and a party relying on it need not plead or prove the jurisdictional facts. The burden of proof is on the party who attacks the judgment to show lack of jurisdiction." (8 Witkin, Cal. Procedure (5th ed. 2008) Attack on Judgment on Trial Court, § 5, p. 589.)

The return of a registered process server "establishes a presumption, *affecting the burden of producing evidence*, of the facts stated in the return." (Evid. Code, § 647, italics added.) Rawat claims she produced evidence sufficient to rebut the presumption, so it should have disappeared. (*Id*., § 604; see *Farr v. County of Nevada* (2010) 187 Cal.App.4th 669, 680-682; *In re Heather B.* (1992) 9 Cal.App.4th 535, 560-561.) But the trial court found Rawat appeared in the action, disbelieving her contrary declarations, thereby trumping any issue about the service presumption.

The denial of a motion to vacate is reviewed for an abuse of discretion, and we defer to the trial court's resolution of any factual conflicts in the declarations. (See *In re Marriage of Connolly* (1979) 23 Cal.3d 590, 597-598; *Anastos v. Lee* (2004) 118 Cal.App.4th 1314, 1318-1319; *Baratti v. Baratti* (1952) 109 Cal.App.2d 917, 921-922.)

9

Rawat's failure to state the facts fairly forfeits her evidentiary points.  (*Foreman &*
*Clark Corp. v. Fallon* (1971) 3 Cal.3d 875, 881 (*Foreman*).)  "[I]n addressing [a party's]
issues we will not be drawn onto inaccurate factual ground."  (*Western Aggregates,*
*Inc. v. County of Yuba* (2002) 101 Cal.App.4th 278, 291.)[6]

B.  *Punitive Damages*

Rawat claims that no substantial evidence supports her liability for ratifying her
husband's reprehensible conduct.  But because there is no reporter's transcript of the trial,
Rawat cannot attack the factual finding that she and Singh were co-actors in matters
regarding Trust property.  (See, e.g., *Foust v. San Jose Construction Co., Inc.* (2011) 198
Cal.App.4th 181, 186-187.)

We also reject Rawat's claim that her conduct was insufficiently reprehensible to
merit an award of punitive damages.  First, she does not state any facts about
reprehensibility, far less state them in favor of the judgment, and therefore forfeits the
claim.  (*Foreman*, *supra*, 3 Cal.3d at p. 881.)  Second, the trial court detailed a vicious
and premeditated course of conduct that meets the standard for punitive damages.  "Of
the three guideposts that the [United States Supreme Court] court outlined [to establish
the propriety of an award of punitive damages], the most important is the degree of
reprehensibility of the defendant's conduct.  On this question, the high court instructed
courts to consider whether '[1] the harm caused was physical as opposed to economic; [2]
the tortious conduct evinced an indifference to or a reckless disregard of the health or
safety of others; [3] the target of the conduct had financial vulnerability; [4] the conduct

---

[6] Rawat separately contends extrinsic fraud has occurred because a sworn declaration is
sufficient to rebut the presumption of service.  We agree a declaration of non-service *if*
*credited by the trial court* can rebut the presumption of proper service, as explained in a
case cited by Rawat.  (See *City of Los Angeles v. Morgan* (1951) 105 Cal.App.2d 726,
729-731.)  But the trial court herein expressly declined to credit Rawat's declarations,
finding them "unpersuasive."

involved repeated actions or was an isolated incident; and [5] the harm was the result of intentional malice, trickery, or deceit, or mere accident.' " (*Roby v. McKesson Corp.* (2009) 47 Cal.4th 686, 713.)

In this case, all five factors are present, even without considering all *prior* actions by the defendants. After Fernandes returned home from working a graveyard shift as a Denny's waitress--and without any prior notice due to the fraudulent proof of service-- she found herself without a home or her necessary property, such as food and clothing. This caused her emotional distress, not merely economic harm. She struggled to keep her job after the fraudulent eviction and had to stay with friends, showing she could not financially absorb the blow defendants inflicted. The conduct was repeated, in that this was the third baseless attempt to evict Fernandes; it was no accident, but was part of a vicious campaign to stop her from seeking habitable housing. Defendants showed no remorse, inasmuch as they took no steps to remedy the substandard conditions, as reported by the subsequent tenants. (See *Lopez v. Watchtower Bible & Tract Society of New York, Inc.* (2016) 246 Cal.App.4th 566, 592-593 [proof of a pattern of misconduct would be relevant to show a defendant acted with willful and conscious disregard].)

In short, the trial court found sufficient facts meriting punitive damages.[7]

Pointing to a general rule regarding punitive damages, that it is a plaintiff's burden to prove a defendant's financial condition (see *Adams v. Murakami* (1991) 54 Cal.3d 105, 108-109), Rawat faults the evidence of her financial condition because Fernandes's declaration about the "sale value" of the real property--which was unrebutted--was insufficient. This argument overlooks the trial court's discovery order compelling Rawat,

---

[7] Rawat's claim that no compensatory damages were awarded against her misreads the statement of decision. The statement of decision first states it will refer to all defendants as "Singh," and then speaks of the conduct of particular defendants, awarding compensatory damages against Singh individually, and then finding Rawat and the Trust ratified his conduct, thus making them equally liable.

the Trust, and Singh, to produce evidence of their financial condition--an order disregarded by each defendant. A defendant is in the best position to know his or her financial condition, and cannot avoid a punitive damage award by failing to cooperate with discovery orders.

A number of cases have held that noncompliance with a court order to disclose financial condition precludes a defendant from challenging the sufficiency of the evidence of a punitive damages award on appeal. (See *Corenbaum v. Lampkin* (2013) 215 Cal.App.4th 1308, 1337-1338; *StreetScenes v. ITC Entertainment Group, Inc*. (2002) 103 Cal.App.4th 233, 243-244; *Mike Davidov Co. v. Issod* (2000) 78 Cal.App.4th 597, 600, 606-610; see also *Caira v. Offner* (2005) 126 Cal.App.4th 12, 40-41; *In re Marriage of Hofer* (2012) 208 Cal.App.4th 454, 458-459.) Rawat makes no effort to explain why these authorities do not apply herein. We find they do, and reject her claim of error.

## II

### *Appeal of Singh*

Singh's briefing flagrantly disregards appellate norms. As we have told him before, a brief must contain " 'meaningful legal analysis supported by citations to authority and citations to facts in the record that support the claim of error' " and contain adequate record citations, or else we will deem all points "to be forfeited as unsupported by 'adequate factual or legal analysis.' " (*Singh*, *supra*, 227 Cal.App.4th at p. 817.)

Singh once again has filed briefs that either state the facts in the light favorable to himself, rely on facts unsupported by the record, or make incoherent legal arguments. However, we discern four issues presented with sufficient clarity to merit discussion. Any other points "are simply overtaken or outflanked by resolution of the matters which we do discuss or do not warrant discussion because they are too fragmentary or obscure." (*Claypool v. Wilson* (1992) 4 Cal.App.4th 646, 659; see *Tilbury Constructors, Inc. v. State Comp. Ins. Fund* (2006) 137 Cal.App.4th 466, 482.)

12

First, Singh contends that Rawat and the Trust were not served.  But he lacks standing to make this claim.  (See *In re J.T.* (2011) 195 Cal.App.4th 707, 717.)  Moreover, we have already rejected similar claims raised by Rawat.

Second, Singh claims that he should not be subject to punitive damages in the absence of evidence of his financial condition.  This echoes the same claim raised by Rawat, and we give the same answer:  By disobeying the court order to produce evidence of his financial condition, Singh has forfeited this claim.

Third, Singh claims that a punitive damage award cannot exceed three times the compensatory award.  We disagree with this contention, insofar as it presents a purely facial challenge to the punitive damages award, not an as-applied challenge, because Singh does not state the facts fairly.  (See *Foreman*, *supra*, 3 Cal.3d at p. 881.)

The punitive damages award was just under four times the compensatory damages award (350,000/87,894 = 3.982).  Our Supreme Court has held punitive damages should rarely exceed a single-digit multiplier.  (See *Nickerson v. Stonebridge Life Ins. Co.* (2016) 63 Cal.4th 363, 367 ["Absent special justification, ratios of punitive damages to compensatory damages that greatly exceed 9 or 10 to 1 are presumed to be excessive"]; *Simon v. San Paolo U.S. Holding Co., Inc.* (2005) 35 Cal.4th 1159, 1181-1183.)  The high court has stated "an award of *more than* four times the amount of compensatory damages *might* be close to the line of constitutional impropriety."  (*State Farm Mut. Ins. v. Campbell* (2003) 538 U.S. 408, 425 [155 L.Ed.2d 585, 606], italics added.)  The ratio in this case was *below* that suggested line, and therefore is not facially infirm.  (See *Izell v. Union Carbide Corp.* (2014) 231 Cal.App.4th 962, 984, 988 [upholding punitive damage award reflecting a 4.62 to one ratio compared to the compensatory award].)

Singh's reliance on *Hale v. Morgan* (1978) 22 Cal.3d 388 (*Hale*), is not persuasive.  *Hale* involved a statutory penalty of $100 per day for wrongfully cutting off a tenant's utilities under a former version of Civil Code section 789.3.  (See Stats. 1971, ch. 1274, § 1, pp. 2494-2495.)  Because the utilities were off for 173 days, the trial court

13

imposed a penalty of $17,300. (*Hale*, at pp. 392-393.) *Hale* held such a penalty--*on the specific facts of that case*--violated due process. (*Id.* at pp. 397-398; cf. *Kinney v. Vaccari* (1980) 27 Cal.3d 348, 352-356 [distinguishing *Hale* on the facts and upholding award of multiple days of penalties].) An important fact was that once service is cut off "the duration of the penalties is potentially unlimited, even though the landlord has done nothing" except fail to restore service. (*Hale,* at p. 399.) But here, the statutory penalty was for four *specific* acts (three acts of filing baseless eviction cases, and a fourth for repeatedly demanding rent in excess of the conditional judgment), at the statutory rate of $2,000 per act, for a total statutory penalty of $8,000. (But see fn. 5, *ante*.) Thus, *Hale*, a fact-driven case, does not advance Singh's claims in this case.[8]

Fourth, Singh contends the attorney fee award was excessive. The trial court was best positioned to determine a reasonable fee award. (See *PLCM Group, Inc. v. Drexler* (2000) 22 Cal.4th 1084, 1095.) Because Singh does not fairly describe the evidence supporting the award, he has not demonstrated an abuse of discretion.

---

[8] Singh also argues that because the trial court imposed statutory penalties it could not award punitive damages under Civil Code section 3294. But Civil Code section 1942.5, subdivision (h), provides that statutory penalties are "in addition to any other remedies" provided by law. Singh's reliance on *Cyrus v. Haveson* (1976) 65 Cal.App.3d 306 is also unhelpful. That case held malice was not well-pled, and also addressed a forcible entry claim for which statutory damages were then capped at three times actual damages. (*Id.* at pp. 316-317.) In this case Fernandes pleaded and proved malice, and several torts not subject to that damages cap. (See e.g., *id.* at p. 316 [conversion]; *Spinks v. Equity Residential Briarwood Apartments* (2009) 171 Cal.App.4th 1004, 1055-1056 [retaliatory eviction].)

14

## DISPOSITION[9]

The judgment is affirmed.  Defendants shall pay plaintiff's costs on appeal.  (See Cal. Rules of Court, rule 8.278(a)(1) & (2).)

      /s/      
Duarte, J.

We concur:


     /s/     
Blease, Acting P. J.


     /s/     
Nicholson, J.

---

[9] We disregard Singh's ad hominem attacks on the trial court judge.  (Cf. *In re S.C.* (2006) 138 Cal.App.4th 396, 421; *Lazzarotto v. Atchison, T. & S. F. Ry. Co.* (1958) 157 Cal.App.2d 455, 462.)  Instead, we commend the trial judge for his evident patience.

Filed 11/2/17

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(Sacramento)

----

| | |
|---|---|
| TAMMY FERNANDES,<br><br>    Plaintiff and Respondent,<br><br>  v.<br><br>RAJ SINGH et al.,<br><br>    Defendants and Appellants. | C080264<br><br>(Super. Ct. No. 34-2013-00146694-CU-BC-GDS)<br><br>ORDER GRANTING PUBLICATION; MODIFICATION OF OPINION; AND DENIAL OF PETITION FOR REHEARING<br><br>[NO CHANGE IN JUDGMENT] |

THE COURT:

Defendants Raj Singh et al. have filed petitions for rehearing with this court. Respondent Fernandes and nonparties City of Elk Grove, County of Sacramento, and City of Sacramento have filed requests for publication with this court. It is hereby ordered:

1

1. Defendants' petitions for rehearing are denied.

2. The opinion in the above-entitled matter filed October 5, 2017, was not certified for publication in the Official Reports. For good cause it now appears the opinion should be published in the Official Reports, and it is so ordered.

3. It is also ordered that the opinion filed herein be modified as follows:

On page 14 in footnote 8, a sentence is to be inserted at the end of the footnote reading: "To the extent Singh relies on the $600 cap on statutory damages provided by Code of Civil Procedure section 1174, subdivision (b), that provision applies to unlawful detainer actions, and he has not explained how it is relevant to this regular civil action based on wrongful eviction and related claims." The footnote shall now read:

[8.] Singh also argues that because the trial court imposed statutory penalties it could not award punitive damages under Civil Code section 3294. But Civil Code section 1942.5, subdivision (h), provides that statutory penalties are "in addition to any other remedies" provided by law. Singh's reliance on *Cyrus v. Haveson* (1976) 65 Cal.App.3d 306 is also unhelpful. That case held malice was not well-pled, and also addressed a forcible entry claim for which statutory damages were then capped at three times actual damages. (*Id*. at pp. 316-317.) In this case Fernandes pleaded and proved malice, and several torts not subject to that damages cap. (See e.g., *id*. at p. 316 [conversion]; *Spinks v. Equity Residential Briarwood Apartments* (2009) 171 Cal.App.4th 1004, 1055-1056 [retaliatory eviction].) To the extent Singh relies on the $600 cap on statutory damages provided by Code of Civil Procedure section 1174, subdivision (b), that provision applies to unlawful detainer actions, and he has not explained how it is relevant to this regular civil action based on wrongful eviction and related claims.

This modification does not change the judgment.

2

FOR THE COURT:


　　　　　/s/
Blease, Acting P. J.


　　　　　/s/
Nicholson, J.


　　　　　/s/
Duarte, J.

EDITORIAL LISTING


        APPEAL from a judgment of the Superior Court of Sacramento County, David W. Abbott, Judge.  Affirmed.

        Raj Singh, in pro. per., for Defendant and Appellant Raj Singh.

        Kiran Rawat, in pro. per.; Cable Gallagher and Keith D. Cable for Defendant and Appellant Kiran Rawat, individually and as Trustee of the Sita Ram Trust.


        Law Offices of Andrew Wolff, Andrew Wolff, David Lavine; Siegel & Callahan and Caleb Andrew Rush for Plaintiff and Respondent.

4